May it please the Court. Addressing the felony in this case, there was no evidence we submit from which the jury could properly have found or inferred A little louder, counsel. There is no evidence from which the jury could have properly found or inferred that Mr. Blas did not have an I.D. to conceal the firearm. Now, the police, when they took him into custody, they could have asked him if he possessed one. They didn't do that. Or if they did, that wasn't put in evidence. Counsel, that this is the whole thing that's troubling me about this case. I looked at the transcript and I found where the the non-concealed permit was introduced as a as an item of evidence. But I couldn't figure out how that ever got into the stream of the story. Can you tell us what happened when the police accosted or approached the defendant as he came out of the forest and how the guns and the and the the permit came about to get in? What's in the record? Let's put it that way. Right. The only thing as far as the hunting aspect is concerned, which is the misdemeanor, I'm trying to concentrate on the felony, is I'm worried about the felony. So I'm worried about the gun and the permit. Yes. Here is the entire evidence on the question of the permit. An officer was asked, did Mr. Blas have on him his firearms identification? And the answer was yes. And then there's some colloquy about approaching the bench or something. Showing you a government exhibit. Number eight. Do you recognize this? Yes. What is that answer? That would be his firearms identification card. Is it a concealed or unconcealed? And the answer was non-concealed. And it turns out that exhibit eight is what we might call a non-concealed identification card. We've attached this exhibit eight. We've attached a copy of it as an appendix to our reply brief. That is the entire evidence that the government has put on that he did not have an ID to carry a concealed firearm. Well, that may be enough. What concerns me is the question of burden of proof. Who has the burden of establishing that he had the concealed weapon permit? Yes. I think the government did, because I think that is a part of their case. They have to show, and they have alleged that he did not have permission. And I suggest that having that is not an exception to the law. The law simply says that it is a crime if you don't have it, so we submit that the government has that burden. Now, the government concedes that. They totally concede it. Right. And we mentioned that in our brief. But doesn't it the way I saw the evidence was that when the confrontation occurred between the officers and the and Mr. Blass, he produced this exhibit eight. Yes. But of course, we yes. We don't know exactly what they asked him. Even it said, did he have on him his firearms identification? Yes. And they introduced it. And that's all their evidence. Now, to suggest now, assuming that he's the one that has the guns in the vehicle, he's the one that has the duty to carry a permit. He knows enough to get a nonconcealed permit, and yet he's got a concealed weapon. So who is the government supposed to tell him, gee, if you're going to conceal your weapon, you're supposed to have a concealed permit. He knows he's got to have a permit. He's got a nonconcealed permit, and still he had a concealed weapon. Government didn't do that. They didn't plant the weapons, did they? No.  So he's got the weapon. We don't say that. He understands he has to have a permit. He's got one. Isn't it his duty to have the permit, and isn't it his duty to produce it, which he didn't do? Well, it may be his duty to go out and get one because he has been charged with not having permission, which means the ID, or the permit to have it. But we have a criminal case here where they're saying that he broke the law by not having one. And so don't they have to show that he didn't have one? Well, gotcha. He's going to keep it in his pocket while he goes to jail, and he's never going to produce it. Is that it? Well, I'm not saying that, Your Honor. It would have been the simplest thing in the world for a government to simply have asked a police officer, well, did you search him? Did you find a permit on him? No, this is a jury trial, and a jury can take reasonable inferences. And in the meantime, they can think about where that he didn't produce it. Here's what we suggest. To allow the jury to draw an inference from the fact that the government didn't put on a scintilla of evidence of his lack of an ID would be to shift the burden to the defendant to allow that inference to supply that void. The government did not come up with any evidence. They could have subpoenaed the records at the Guam Police Department, but they didn't. Everything that all the evidence on this point is quoted on the bottom of page 4 and the top of page 5 of our opening brief, and I just read it to you, and that's it. The government didn't. The government in this case, for what it's worth, has conceded that they had the burden to do this. The case was tried on that theory. Well, these permits have to be in the possession of the holder at all times. Well, they have to be on the possession of the holder when he is concealing a weapon, let's put it that way. Yeah, well, and here he is, and he doesn't have one. How do we know that? Because he produces this one. Well, he does. The one that I'm showing you in the addendum to the reply. But the evidence is not, would you please give us all the evidence? Isn't a reasonable inference, given the fact that he understood what he had to do with this nonconcealed permit, that if he had one, he would have displayed it? Well, we don't know. We don't even know what the colloquy was. The officer was at, did he have on him his firearms identification? That's a little ambiguous. Yes. Showing you eight, do you recognize this? That would be his firearms identification. Is it concealed or unconcealed? Nonconcealed. He could just as well have had another one. There is nothing about the colloquy. The government is. Do you contend that there is in existence a concealed weapon permit? No. But on the other hand, you know, that's not our problem. The problem is the government never proved it. They could have proved it so simply. I didn't try this case. I got the transcript. I looked through this, and I can't see a scintilla of evidence that he did not have permission, which is an affirmative allegation in the indictment. And the government concedes it. Do you want to say something about the second issue? Or you may reserve your time, counsel. I would rather reserve it. Very fine. Okay. We'll hear from the government. Good morning, Your Honors. Rosetta Siniclis. I come from the districts of Guam and the Northern Marianas Islands. I represent the government. Would you speak up a little bit, counsel? Thank you. Yes, I will, Your Honor. Your Honor, we ask that this Court affirm the convictions in this two case. I could address the arguments in as to the possession of the concealed firearm and the entering military property for an unlawful purpose. I'll begin by addressing the possession of the concealed firearm, which is obviously something that is concerning the Court. What I tried to convey in my arguments is that Guam statutes require a pairing, almost a pairing of when you possess that gun, concealed or nonconcealed, you must possess a concealed firearms identification card. This is shown in Guam Statute 60106, which states that the ID must state whether it's concealed and it has to be carried whenever the gun is concealed. So you have to have an ID as well as the weapon. It's repeated throughout the statute, 60107, that the ID must state whether it is a concealed or nonconcealed under 60108. And when I'm referring to these, I'm referring to the 10 Guam Code annotated. And specifically 60121, the penalty provision which says if you possess a concealed firearm without an identification card, then that is a third-degree felony. Is there a difference between possessing a concealed firearm without a license to do so and possessing this kind of a firearm and not having the permit in your possession? Mr. Traub did bring that up, that that's not something that is clear in our statutes. Well, how do we know this guy, you know, based on the evidence, that he simply, he might have had one, but he didn't have it with him? We know from the transcripts that have been pointed out that when he was asked for his firearm identification card, first he told the officers, this was a conservation officer and an Air Force officer, that he had guns hidden in the car. He referred to it multiple. It turned out there was a, what initially appeared to be a .22 rifle in the front seat. When they searched the car, they found a .357 Magnum handgun within reach, outside of view, and the officers asked him if he had a firearm ID card. He presented the non-concealed. Now, the non-concealed weapon was for the SKS rifle. If we take it a little further back, what brought the attention, what caught the attention of the officers was that he was in the jungle, and he was hacking away at the jungle with a machete in one hand and an SKS assault rifle in the other. They heard the noises of chopping, and they waited until he came out of the jungle. When the defendant saw the officers, he threw the SKS rifle onto the ground, and then he later threw the machete to the ground. They searched the vehicle, found the .357, and then that's where the question arose. Do you have an ID for this? And Mr. Trapp is correct that it's not exactly clear what specific words were used. We do have the response where he gave a non-concealed firearm identification card for the SKS assault rifle. Is it clear what the burden of proof is at this point? Obviously, the government has the burden of establishing the crime, but where there is an absence of a permit, whose burden is that? I believe it is the government's burden to prove it, because the statute does say that it's the government's. To prove that there is no permit? Is that what you're saying? No. To prove that at that time, when the defendant concealed it, he was without a concealed firearm identification card. And we're back to that pairing requirement in the statutes. You must have the firearm ID card, concealed or non-concealed, with the weapon. Well, let me go another way. Is it enough simply to say that the defendant had an opportunity to show a concealed weapons permit and he failed to do so? Can we affirm on that basis or not? I'm sorry. Could you repeat the question? Well, is it enough simply to say there's nothing in the record to show that he had a concealed weapon permit? Is that enough to affirm? That he had a non-concealed? No, no. No, no. There's nothing in the record to show that he ever had a concealed weapons permit. I believe, Your Honor, that based on the totality of all the facts, that that would be sufficient. When he was asked, do you have an ID for this, he didn't have it. He didn't pair it with the gun. And so therefore, it's a reasonable inference that the jury made that he didn't have the concealed permit. When he came out of the jungle with the assault rifle. Yes. He was asked if he had a permit. The transcript, and let me retrieve it. Yeah, because I'm having a problem with that exact question of how the non-concealed permit was handed over under what conditions or what questions by the officers. I refer to the court to, this is the second trial. It's page 119. The colloquy is this. The prosecutor asked to retrieve the bag and the assault rifle. On line 18, he asked the question, did Mr. Bloss have on him his firearm identification? The answer was yes. Mr. Tock, may I approach, Your Honor? You may. He showed the witness, the government exhibit eight, asking him if he recognized it, yes. What was that? That would be his firearm identification card. Is it concealed or non-concealed? Non-concealed. We do not have the specific language that the conservation or the Air Force officer asked. Do you have an ID? Do you have a concealed? We do not know. All we know is that the officer testified that he asked him that he was able to obtain the firearms identification card, and that was for the SKS assault rifle. I tried a million of these kinds of cases, and when you have to prove something like this, a negative, you simply bring in somebody from the department, which is what the code says, and the department person says, I'm the custodian of records or something like that. I understand these records. I searched the records under this name to determine whether there had been issued a permit of this kind, and I couldn't find one. Why wasn't something simple like that done in this case? Your Honor, I'm not sure what the trial strategy was. I believe that the prosecutor believed that that was sufficient, that at that time, did he pair the non-concealed or, I'm sorry, the concealed permit with the gun. We're again back to that pairing requirement of TANGCA section 60114. In hindsight, had this matter been tried, and certainly if I am going to try it, I will probably put the records custodian on to say that I've conducted a diligent search, and that certainly probably would have saved us this issue on appeal. But I don't believe that it's the government's requirement to prove a negative averment. The ---- No, but you've got to prove the element of the crime. Yes, Your Honor, and the government did prove that on this date, January 23rd, 2005, the defendant concealed the firearm identification card, and he did not have a concealed permit with him. I noticed that in the same colloquy, the ---- apparently these exhibits were marked before. They handed an exhibit, Government Exhibit 10. What is it? It would be the weapons permit for the revolver registered to Roland C. Blass. Correct. Now, we have on trial Mr. Peter Blass. Now, Roland was the brother who owned the gun, so the Exhibit 10 was Roland's permit for the gun. Yes. Then the next thing that was introduced was Exhibit 6, and that would be the weapon registration for the SKS to Peter, which was the non-concealment. Okay? So we have before the jury 1, the gun, the concealed weapon. Exhibit 10, the weapon from Roland, which goes to the concealed gun. The weapon, the assault rifle, and the identification non-concealed for the assault rifle to the defendant. Now, is that enough for the jury to infer under the statute with this ambiguity that Peter Blass did not have a concealed permit for the registered weapon when we do have in the record the concealed permit by the brother? In other words, you've got to make some connections. What kind of inferences are we making here? Number one, I don't know. Maybe I've missed something. How did Exhibit 10, Exhibit 6, and Exhibit 7 actually be made? Was there some previous testimony that indicated or were these stipulated in? In other words, all we have are the exhibits, but we don't know how the exhibits connect to the people, other than the fact that they say, would this be the weapons permit for the revolver registered to Roland C. Blass? And then they approach, and then all of a sudden these things just go into evidence. I don't quite understand. Was there something that I'm missing in the record somewhere else? Your Honor, what happened was this was actually two trials, and I did note that some of it, it got a little more boiled down in the second trial. We were only concerned about the second trial. And they have a different jury. So the prior jury didn't hear what happened. And if they all stipulated that these exhibits should come in, the jury has no background on them. I believe that the prosecutor thought that when he presented this that it should be, it could be a reasonable conclusion for the jury to say that that pairing requirement was not made, that he may have had a weapon permit, a firearms ID permit for the SKS rifle. But the issue was the concealed one. If he didn't have it in his pocket, if he didn't have it anywhere on him, he didn't present it, then I believe that the government thought that that would be sufficient to meet the statute, to meet that pairing requirement under 6-0. So under the statute, doesn't the nonconcealed permit that Peter Blass had, that could also include a revolver? Correct. Handgun, shotgun. So you're going to draw inference from that, that because he only produced that and he had the revolver, that he should have known, blah, blah. Is that all these inferences? Yes, Your Honor. And because he did not have it, he did not have the concealed, he did not go to the extent of going to the director of public safety, of proving that he was a person who was authorized to be one of this, a class of person who had absolute necessity to possess a concealed permit, that there was a danger for his safety. Again, the concealed permits are not something that's just automatically issued to you. All right. Thank you, counsel. Your time has expired. Thank you, Your Honor. Take the message home, you know. If you have a burden like this, call the department person. Thank you, Your Honor. I will. Mr. Trapp. Deputy Chief of Prosecutors no longer on Guam, Your Honor. Be that as it may, I'll just say very quickly that there's no evidence that he, that Peter Blass produced it. We've gone over the evidence. As far as the owner's ID, I suppose it was to show that he didn't own it. But you don't have to own the gun. You only have to have permission to conceal it. And you have to have that with you at all times, according to Guam law. That's right. And the government has to prove that, because this is not a law against concealing a weapon. This is a law against having a concealed weapon, having, possessing a concealed weapon without permission. Your best case, then, is between Exhibits 10, 6, and 7. There's not enough for them to infer that he did not have a concealed weapon. Because that's the only evidence we have. Exactly. And without elaborating, we have addressed those arguments in our reply, Your Honor. On the other hand, then you could say it's reasonable to infer that's enough to prove that. Well, it's not evidence, Your Honor. It's a lack of evidence. And the government has to carry its burden. Was the gun his, the .357? The .357 was not his. Whose was it? It was his cousin's or his brother's, I forget which. And there was evidence in the record to show that. Yes. But let me say this. I have an investigator, for example. And he has a concealed weapons I.D. And so when we have a gun that belongs to a client and he can't possess it because he's had a pretrial release, my investigator will hold on to it, because these are not issued for guns. They are issued to people to possess guns of a certain kind. Well, the fact that somebody else may have a license to carry this concealed weapon doesn't give him any authority to have it. Absolutely not. And I don't even think it was a concealed weapon license that the brother had, Your Honor. Anything further? No, Your Honor. Thank you, counsel. The case just argued will be submitted for decision.
judges: Brunetti, O'scannlain, Trott